RODDA *v.* CITY OF DETROIT.

1. Municipal Corporations — Defective Sidewalk — Construc-
   tive Notice.
   A city has constructive notice of a defect in a sidewalk where
   the same has existed for upwards of two months.

2. Same—General Condition—Evidence.
   A declaration described a sidewalk as being defective at a point
   opposite and a little west of certain premises. *Held,* that
   plaintiff had a right, upon the question of notice, to show
   the general bad condition of the walk in front of the premises
   described.

Error to Wayne; Frazer, J. Submitted April 26, 1898.
Decided June 28, 1898.

Case by Simon J. Rodda against the city of Detroit for
personal injuries. From a judgment for plaintiff, defend-
ant brings error. Affirmed.

*C. D. Joslyn,* for appellant.

*George H. Carlisle* (*Alfred Lucking,* of counsel), for
appellee.

Long, J. This action is brought to recover damages
for an injury received on a defective sidewalk. It appears,
without contradiction, that the plaintiff, who resides in the
city of Detroit, on the evening of May 25, 1895, between
dusk and darkness, was passing eastward over the side-
walk on the south side of Hancock avenue, in company
with a boy named Eipper. When they reached a point
between Fourth and Crawford avenues, opposite and a
little to the west of the house of Mr. Duncan, which is on
the north side of the street, plaintiff's feet became entang-
led under a loose plank in the walk, and he was thrown to
the ground, sustaining severe injuries. When assisted by

another person to rise, they found the plank over which he had fallen out of place, and lying diagonally across the walk. On a trial the plaintiff had verdict and judgment.

The only question raised by this record is whether there was any evidence that the walk at this particular place had been out of repair for such a length of time that it was the duty of the city to have known it. There was no claim that the city had actual notice of its defective condition.

The court charged the jury as follows:

"I am requested by defendant to charge you that 48 hours would not be sufficient, and I say to you that it would not be sufficient. I am requested by plaintiff's counsel to charge you that two months would be sufficient, and I charge you that it would be sufficient."

The court thereupon further instructed the jury that, if they found that the walk had been out of repair for a sufficient time to amount to constructive notice of its condition, the verdict should be for plaintiff.

Inasmuch as the contention is that there was no evidence to warrant this charge, we shall cite some of the testimony given. Mrs. Josephine B. Cole testified, in be half of plaintiff, that she—

"Used to pass over the walk three or four times a week before the injury to Mr. Rodda, and knew the condition of the sidewalk on the south side of Hancock avenue, at the point in question.

"*Q.* Why were they unsafe?

"*A.* Because they were loose.

"*Q.* How do you know they were loose?

"*A.* Because, in walking over them when a person was walking with you, you had to be careful that you didn't step on the other end of the board and throw you down. If they stepped on the board as you went to, the board would rise up and throw you over.   *   *   *

"*Q.* How long a time before you heard of Mr. Rodda's accident had that walk been in that condition, to your knowledge?

"*A.* I had been going over it more or less all the spring. I should judge it might have been loose in April. I could

not remember, indeed. * * * It had all the spring, as far as I can remember in my walking back and forth there; I think it was loose. * * *

"*Q.* Where was this walk with reference to Mr. Duncan's house?

"*A.* Across the road from it.

"*Q.* I mean this bad place in the walk?

"*A.* I think, if I remember rightly, Mr. Duncan's house is on the alley, and on the north side of the street, and this walk starts from the alley up on the south side."

Mrs. Florence Robinson testified in behalf of plaintiff that she knew about the walk at the point where plaintiff was injured.

"*Q.* What was the condition of the walk at the place about 50 or 60 feet west of the alley between Fourth and Crawford, on Hancock avenue, on the southerly side?

"*A.* In very bad condition.

"*Q.* How do you know? ·

"*A.* Because I walked over that walk very frequently, going through to Woodward-avenue cars, and going through evenings to a class that I had on Second avenue in the winter. * * *

"*Q.* How far from the alley were the boards loose?

"*A.* I should judge from 50 to 60 feet.

"*Q.* In the place that has been described here in the evidence?

"*A.* Yes, sir.

"*Q.* How do you know the boards were loose?

"*A.* I walked over them so many times that I know. I stubbed my toe frequently. I had my class right there in February and March down on Second avenue, and I walked over that way, and it was in bad condition then, and also all along in the spring.

"*Q.* Right up to the time he was hurt?

"*A.* Yes, sir. * * *

"*Q.* Do you know where Mr. Duncan lived?

"*A.* Yes, sir.

"*Q.* Where were the loose planks in this walk with reference to his house?

"*A.* Across the street, a little to the west."

Mrs. Laura Deacon, called by plaintiff, testified:

" *Q.* Did you know in May, 1895, about the walk opposite Mr. Duncan's house?

"*A.* I don't know that I knew of it at that particular time, but I had known it before.

" *Q.* You know the walk?

"*A.* Yes, sir; perfectly.    *    *    *

" *Q.* You say you knew the walk before he was hurt?

"*A.* Yes, sir.

" *Q.* During what period, particularly?

"*A.* The spring before that.

" *Q.* Was there anything special?

"*A.* I used to go through that block to church every Sunday and frequently.    I would pass over the walk when it would teeter, and the boards would be loose, and I would step in and out to avoid being tripped on them, and the water would flush between the boards many times in the spring when it was breaking up; and I remember one time    *    *    *    I was with a lady, and we noticed the whole of one section of the sleepers was decayed so that the nails would not adhere to them.    *    *    *    The boards were loose because the stringers were decayed.

" *Q.* How do you know that?

"*A.* Because I examined them in one section.

" *Q.* How did you come to do that?

"*A.* Because they were loose, and I had had notice to mend my own walk."

The testimony of these witnesses had reference to the walk at the exact locality where the plaintiff was injured, and its defective condition covers a period of time sufficient that the city must be presumed to have had notice of the fact and have had time to repair.    The question was properly submitted to the jury.

Counsel for defendant, however, contends that this testimony had reference only to the general bad condition of the walk, and was not confined to the existence of the defect complained of.    This contention, we think, is not borne out by the evidence.    The particular place described in the declaration was at a point in the south sidewalk opposite and a little west of Mr. Duncan's house, and it is also described as being about 50 or 60 feet west of the alley.    The witnesses refer to this particular place as the place where the walk was in bad condition.    Under the

declaration, however, the plaintiff had a right, as bearing upon the question of notice, to show the general bad condition of the walk in front of the premises described. *Campbell* v. *City of Kalamazoo*, 80 Mich. 660.

We find no error in the record. The judgment must be affirmed.

The other Justices concurred.